# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

CORESSELL ANTIWAN SMOOT, )    CIVIL ACTION NO. 9:13-214-GRA-BM
          #209021,      )
                      )
          Petitioner,   )
                      )
v.                      )    **REPORT AND RECOMMENDATION**
                      )
                      )
WARDEN, MCCALL,     )
                      )
          Respondent.  )
_____)

          Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on January 18, 2013.[1]

          The Respondent filed a return and motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 17, 2013. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on April 18, 2013, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case. Although Petitioner initially failed to respond, he subsequently filed a memorandum in opposition to summary judgment on July 10, 2013. This matter is now before the Court for disposition.[2]

---

     [1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

     [2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As (continued...)



## **Procedural History**

Petitioner was indicted in the March 2006 term of the Florence County Grand Jury for armed robbery, possession of a weapon during the commission of a violent crime, and possession of a pistol by a person convicted of a violent crime. [Indictment No. 06-GS-21-569]. (R.p. 84). Petitioner was represented by Karen E. Parrott, Esquire, and on June 26, 2007, pled guilty to armed robbery and possession of a weapon during the commission of a violent crime. See (R.pp. 1-22, 85-89). Petitioner was sentenced to twelve (12) years for armed robbery and five (5) years, consecutive, for the weapons charge. (R.pp. 21-22, 85-86). Petitioner did not appeal his convictions and/or sentences.

Petitioner then filed an Application for Post Conviction Relief ("APCR") in state circuit court on June 16, 2008. Smoot v. State of South Carolina, No. 2008-CP-21-1165. (R.pp. 24-30). Petitioner raised the following issues in his APCR:

**Ground One:** Ineffective assistance of counsel:

a. I was denied my motion of discovery until 1 ½ weeks before my sentencing date because I couldn't afford my 40 dollar Public Defender Fee, which enabled me to prepare my case.

b. There was a conflict of interest between my attorney and myself. She refused to help me get my bond reduced and she threatened to have my bond raised.

c. [Counsel] wouldn't help me get the gun fingerprinted.

d. My attorney did not let me know that there was a 10 year plea offer until the day that I was sentenced.

**Ground Two:** Involuntary guilty plea. I was advised by my attorney that I had no other option but to plea[d guilty] or I would receive the maximum punishment.

---

[2](...continued)
this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



(R.p. 26).

Petitioner was represented in his APCR by Kevin Barth, Esquire, and an evidentiary hearing was held on September 10, 2009. (R.pp. 38-73). On September 25, 2009, the PCR Judge entered a written order denying Petitioner's APCR in its entirety. (R.pp. 75-83).

Petitioner appealed the denial of his APCR, and was represented in his appeal by Robert M. Pachak, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a Johnson[3] petition seeking to be relieved and raising the following issue:

Whether petitioner's guilty plea was voluntarily and intelligently entered?

See Petition, p. 2.

Petitioner did not file a pro se response, and the South Carolina Court of Appeals denied certiorari and granted counsel's request to be relieved as counsel on January 7, 2013. See Smoot v. State, Order dated January 7, 2013. The Remittitur was sent down on January 23, 2013. See Remittitur (dated January 23, 2013).

However, while his PCR appeal was pending, Petitioner filed a second APCR on November 14, 2011, raising the following issues:

**Ground One:** My parole officer, Luther Patrick, was given an invitation to my wedding and he can attest to the fact that my wedding was canceled at the last moment. He also mandated me to complete a drug treatment program at the Community Control Center in Charleston. At my PCR hearing, I expressed the lack of sufficient communication between my counsel and myself, and I also explained my distrust and discomfort with her; along with my reasoning for feeling that way. My mother stood before the judge with me on the day of my guilty plea hearing, and she stated that during the commission of the crime I was homeless because my father had evicted me from their household. The retraining order was placed on me by the woman that I was engaged to marry. I was acting totally other than myself to the point that my behavior even scared her. The female that influenced me to waive my

_____

[3]Johnson v. State, 364 S.E.2d 201 (S.C. 1998); see also Anders v. California,386 U.S. 738, 744 (1967).

3



plea offer was present along side me when I finally admitted my guilty to the judge on June 26, 2007.

<u>See</u> Petition, p. 3. [Back]; <u>Smoot v. South Carolina</u>, C.A. No. 2011-CP-21-3046.

The State moved to dismiss the petition, without prejudice, because Petitioner's appeal of his first APCR was still pending.  The PCR judge granted the motion and dismissed the second PCR petition, without prejudice, on January 4, 2012.  <u>See</u> Order dated January 4, 2012.

After receiving the South Carolina Court of Appeals decision denying the appeal of his first APCR, Petitioner filed this federal habeas corpus petition, raising the following issues:

**Ground One**: Ineffective Assistance of Counsel.

**Supporting Facts**: My counsel failed to provide me with my Rule 5 Brady trial motion until one week before my trial.  In my PCR transcript, she argued that she furnished me with my Rule 5 two weeks prior to my trial hearing.  Even if that were true, two weeks was not sufficient amount of time for me to review it, properly prepare my defense, and subpoena witnesses.  I was out on bond for almost one and half years requesting my Rule 5.  My 6th Amendment [rights were] clearly violated because it states that the accused shall enjoy the right to be informed of the nature and cause of the accusation, confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel for his defense.  My 14th amendment for due process was violated when my counsel failed to move the court earlier in the discovery process for my discovery materials.  This also violates my constitutional rights under Rule 5 (SCCRMP).  Also, the fingerprint analysis for the gun that I was sentenced for was excluded from the Rule 5 that I was furnished with two weeks prior to my trial.  My counsel admitted to failing to provide me with the fingerprint analysis.  (PCR Transcript, page 25, lines 23-25).  She also testified that that very same gun was "the actual crutch of the state's case."  (Trial transcript; page 10, lines 3-4).  I was not informed that a fingerprint analysis existed until the day of my PCR hearing.  My counsel had only told me that the gun was not tested because the robber was wearing gloves.  The gloves that were allegedly found were never tested and my counsel testified that she didn't try to have them tested (PCR Transcript; page 26, lines 8-11).  There was no still photos or video footage of me placing the gun where it was allegedly found.  My Rule 5 stated that I allegedly gave a statement to a fellow inmate during my stay at the Florence County Detention Center, disclosing to him where the gun could be found.  That inmate allegedly relayed that information to the law enforcement and, from that information, the gun was allegedly discovered.  My counsel was ineffective for not challenging, or advising me to challenge the gun possession charge, knowing that the only evidence against me was an alleged statement from another inmate who could have



very well arranged for someone to plant the weapon where it was allegedly found, for whatever reason he chose to tell the law enforcement that information. My counsel's deficient performance in depriving me of this exculpatory evidence prejudiced me and, but for the professional error of her not providing me with the fingerprint analysis, the court proceeding would have been different because I would have challenged the gun issue. I would have also been confident enough to go to trial and not under duress or coercion to plead guilty, as I was coerced by my counsel.

**Ground Two:** Involuntary Guilty Plea.

**Supporting Facts**: My guilty plea was involuntary on the grounds that my decision to plea wasn't intelligently made, due to my counsel's failure to inform me that I had a very arguable issue for a trial, which I mentioned in Ground One. I was coerced into pleading and the decision to do so was my counsel's instead of my own. My counsel testified that she failed to get me to sign anything saying that pleading is what I wanted to do. (See PCR Transcript; page 25, lines 1-12). Counsel was ineffective by failing to make sure that, under the due process clause, my guilty plea was knowingly, intelligently and voluntarily made due to the fact that she failed to inform me of arguable issues that could have been raised in trial. When I gave my testimony during my guilty plea hearing, I acted solely under the advice of my counsel. My guilty plea was the product of duress, coercion and fear of a harsh sentencing threat.

See Petition, pp. 6-7 & Attachments.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).



# I.

Initially, it is readily apparent that Petitioner raises several issues in his federal habeas Petition which were not presented in his state court proceedings. Specifically, the following allegations raised in Ground One of the Petition were not previously properly raised and exhausted in his state court proceedings: 1) his Fourteenth Amendment right to "due process was violated when my counsel failed to move the court earlier in the discovery process for my discovery material[,] . . . [which] also violates my constitutional rights under Rule 5 (SCCRIMP)"; 2) "the fingerprint analysis for the gun that I was sentenced for was excluded from the Rule 5 that I was furnished with two weeks prior to my trial"; 3) that counsel failed to inform him that a fingerprint analysis existed until the day of my PCR hearing; 4) that counsel failed to have the gloves that were found tested; and 5) that "counsel was ineffective for not challenging, or advising me to challenge the gun possession charge, knowing that the only evidence against me was an alleged statement from another inmate who could have very well arranged for someone to plant the weapon where it was allegedly found, for whatever reason he chose to tell the law enforcement that information." Petitioner also failed to properly raise the following issue in Ground Two of his Petition in his state court proceedings: that his plea was involuntary because counsel failed to inform him that he "had a very arguable issue for a trial, which I mentioned in Ground One. I was coerced into pleading and the decision to do so was my counsel's instead of my own." [4]

---

[4]Petitioner did exhaust certain claims in Grounds One and Two, which are discussed on the merits herein. See discussion, infra. While some of the above cited claims may seem related to Petitioner's properly exhausted claims, that is not the standard for federal habeas review. Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999), cert. denied, 528 U.S. 959 (1999)["In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court . . . . That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.](quoting Townes v.
(continued...)



Petitioner did not raise these issues as presented in this federal Petition in his ACPR, and also did not file a motion for the PCR court to reconsider its order denying his APCR, even though such a motion was necessary if he wanted to assert or preserve any of these claims.  Al-Shabazz v. State, 527 S.E.2d 742, 747 (S.C. 2000)[A "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order."] (citing  Pruitt v. State, 423 S.E.2d 127, 128 n. 2 (S.C. 1992)[issue must be raised and ruled on by the PCR judge in order to be preserved for review]; Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007)["Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review . . . ."]; Humbert v. State, 548 S.E.2d  862, 865 (S.C. 2001); Plyler, 424 S.E.2d at 478-480 [issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review]; see also Rule 59(e), SCRCP [providing avenue for any party to move to alter or amend a judgment if they believe necessary matters not addressed in original order]; Primus v. Padula, 555 F.Supp.2d 596, 611 (D.S.C. 2008); Smith v. Warden of Broad River Correctional Inst., No. 07-327, 2008 WL 906697 at * 1 n. 1 (D.S.C. Mar. 31, 2008); McCullough v. Bazzle, No. 06-1299, 2007 WL 949600 at * 3 (D.S.C. Mar. 27, 2007)(citing Al-Shabazz, 577 S.E.2d at 747).

Since Petitioner did not make a post-trial motion to request that these issues be addressed, these issues were not properly preserved in Petitioner's APCR and lower state court proceedings, nor were they presented on appeal.[5]  See Cudd v. Ozmint, No. 08-2421, 2009 WL

---

[4](...continued)
Murray, 68 F.3d 840, 846 (4th Cir. 1995)(quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994)).

[5]The Fourth Circuit has held that, prior to the decision of the South Carolina Supreme Court
(continued...)



3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that although Petitioner attempted to raise the issue in his PCR appeal, the issue was procedurally barred where PCR court did not rule on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008).  Further, because Petitioner did not properly raise and preserve these issues in his APCR and state court proceedings, they are barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted.  Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the  petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy

---

[5](...continued)
in Marlar, South Carolina courts had not consistently applied the procedural bar based on a PCR applicant's failure to file a Rule 59(e) motion.  See Bostick v. Stevenson, 589 F.3d 160, 164-165 (4th Cir. 2009).  Here, however, the PCR court's order was filed on September 25, 2009, well after the South Carolina Supreme Court's decision in Marlar in November of 2007.  Therefore, Petitioner's failure to file a Rule 59(e) motion regarding these issues bar these claims.  See Marlar v. Warden, Tyger River Correctional Institution, 432 Fed.Appx. 182, 186-188 (4th Cir. May 25, 2011).

8



the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though exhausted, because these issues were not *properly* pursued and exhausted by the Petitioner in the state court, federal habeas review of these claims is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Petitioner argues that, to the extent that any of his issues are procedurally defaulted, he should still be allowed to pursue them because any default is due to ineffective assistance of his PCR counsel. The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)("[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"); Smith v. Dixon, 14 F.3d 956,



973 (4th Cir. 1994)(en banc).

However, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and this Court has previously held that ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and is not therefore "cause" for a procedural default.  Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings.  A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment.  Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932  (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).  However, the Supreme Court has recently held that Martinez  provided

> that a "narrow exception" should "modify the unqualified statement in Coleman that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  Martinez, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons.  First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . .  Indeed, the right to counsel is the foundation for our adversary system."  Id. at ___, 132 S.Ct. at 1317.
>
> Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a

10



> constitutional claim. Id. at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. Id. at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." Id. at ___, 132 S.Ct. at 1318.
>
> Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were Coleman read broadly) deprive a defendant of any review of that claim at all. Martinez, supra at ___, 132 S.Ct. at 1316.
>
> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." Martinez, supra at ___, 132 S.Ct. at 1318-1319, 1320-1321.

Trevino v. Thaler, 133 S.Ct. 1911, 1917-1918 (2013); Gray v. Pearson, No. 12-5, ___ Fed. Appx. ___, 2013 WL 2451083 at * 2 (4th Cir. June 7, 2013)["The Supreme Court had previously held in Coleman that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish "cause" to excuse a procedural default." Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."]. Because, under South Carolina law, a claim of ineffective assistance of trial counsel is raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v. Reynolds, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); Gray, 2013 WL 2451083, at * 4, fn *; Petitioner's claim of ineffective assistance of PCR counsel as "cause"for his default has been

considered hereinbelow under the revised standard of <u>Martinez</u> and <u>Trevino</u>.[6]

With regard to the first requirement of the <u>Martinez</u> exception, the Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." <u>Gray</u>, 2013 WL 2451083 at * 2. Therefore, Petitioner must show that his PCR counsel's representation was objectively unreasonable during his post-conviction proceeding and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. <u>Ford v. McCall</u>, No. 12-2266, 2013 WL 4434389 at *11 (D.S.C. Aug. 14, 2013)(citing <u>Horonzy v. Smith</u>, No. 11-234, 2013 WL 3776372 at * 6 (D.Idaho Sept. 12, 2012)["The application of the <u>Strickland</u>[7] test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."]

Here, Petitioner has failed to show that his PCR counsel's representation was objectively unreasonable and that there is a reasonable probability that he would have received relief

---

[6]While it may be arguable that the procedurally barred subparts in Ground Two could have been raised in Petitioner's direct appeal and, therefore, Petitioner cannot use ineffective assistance of PCR counsel to attempt to overcome the procedural bar, most of these issues are interwined with Petitioner's ineffective assistance of counsel arguments. Therefore, out of an abundance of caution, the undersigned has assumed <u>arguendo</u> that Petitioner could possibly overcome the procedural bar with regard to these issues if he can show that any of those issues presented a "substantial" issue. However, since the undersigned finds that Petitioner has failed to show any substantial issue; <u>see discussion, infra</u>; it is unnecessary to reach the separate question of whether Petitioner's involuntary guilty plea claim falls within the <u>Martinez</u> exception. <u>Trevino</u>, 133 S.Ct. at 1917-1918.

[7]<u>Strickland v. Washington</u>, 466 U.S. 668 (1984).



on any of these defaulted claims if they had been asserted in his state APCR.  See discussion, infra.[8]

By failing to show any substantial ineffective assistance on these claims, Petitioner has failed to

show cause for his procedural default on these issues.  Accordingly, these claims are procedurally

barred.  Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035

(1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into

Federal Court."].

        Finally, Petitioner also somewhat argues that he is  actually innocent.   However,

cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence

not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v.

Menefee, 391 F.3d 147 (2d Cir. 2004).  Petitioner has failed to present any new, reliable evidence

of any type that was not presented in any of his prior court proceedings which supports his innocence

on the criminal charges to which he pled guilty.  See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to

present a credible claim of actual innocence, a petitioner must "support his allegations of

constitutional error with new reliable evidence-whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe,

391 F.3d at 161 (quoting Schlup for the evidentiary standard required for a court to consider an

actual innocence claim).  Further, Petitioner has also failed to make any showing that a fundamental

miscarriage of justice will occur if these claims are not considered.  Wainwright v. Sykes, supra;

Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of

justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted

---

    [8]Since these findings are somewhat interwined with the law and findings on Petitioner's other ineffective counsel and involuntary guilty plea claims, the undersigned has addressed them collectively with Petitioner's other claims in the following sections.



in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496);

<u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla.

1995).

   Therefore, these claims are procedurally barred from consideration by this Court, and

must be dismissed. <u>Id.</u>; <u>see</u> 28 U.S.C. § 2254; <u>see</u> <u>also</u> discussion, <u>infra</u>.

<div align="center">

**II.**

</div>

   With regard to Petitioner's remaining claims in Ground One, he contends that his

counsel was ineffective for failing to provide him with the Rule 5/<u>Brady</u>[9] trial motion responses until

one week before his plea and that his counsel failed to have the gun analyzed for fingerprints.

Petitioner also contends in Ground Two that his guilty plea was involuntary based upon counsel's

sentencing threat.  These issues were raised in Petitioner's APCR, where Petitioner had the burden

of proving the allegations in his petition.  <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert.</u>

<u>denied</u>, 474 U.S. 1094 (1986).  The PCR court rejected these claims, making relevant findings of fact

and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended.  <u>See</u>

<u>Smoot v. South Carolina</u>, No. 08-CP-21-1165.

   Specifically, the PCR judge found that: 1) the allegation that trial counsel's

representation fell below reasonable professional norms was without merit; 2) trial counsel's

testimony was more credible than that of the Petitioner; 3) trial counsel met with Petitioner numerous

times and discussed the charges and the potential punishment he was facing; 4) trial counsel worked

diligently to obtain a plea offer from the solicitor and received a pretty favorable offer, but Petitioner

rejected that offer; 5) counsel attempted to get the offer extended, but to no avail; 6) trial counsel

---

   [9]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

<div align="center">14</div>



conducted an investigation and determined that the State had a very strong case against the Petitioner and recommended the Petitioner plead guilty; 7) counsel was not ineffective with regard to the discovery as trial counsel provided it to Petitioner and thoroughly discussed it with him; 8) counsel merely advised Petitioner as to what type of information needed to be shown for a bond reduction and advised Petitioner to let her know whether he wanted to follow through with the request and he did not; 9) counsel prepared to try the case when the Petitioner freely and voluntarily made the decision to enter the plea; 10) there was no ineffective assistance with regard to the fingerprints; 11) rubber gloves were worn during the robbery and the lack of fingerprints was not inculpatory; 12) Petitioner's plea was freely and voluntarily entered after being fully advised of the charges he was facing, the potential punishment he could receive, and the rights he would give up in order to enter the plea; 13) Petitioner indicated that he wished to waive his rights and plead guilty; 14) Petitioner stated he was satisfied with his attorney and that he was guilty; and 15) the guilty plea transcript revealed that the plea colloquy was very thorough and left no doubt that the plea was freely, intelligently, and voluntarily entered.  (R.pp. 80-81).

Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531



U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland</u>, 466 U.S. at 698; <u>Pruett v. Thompson</u>, 996 F.2d. 1560, 1568 (4th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d. 1092, 1100 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 913 (1991)).  Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000).  <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u> <u>also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims which were raised and properly exhausted in state court, as well any factual findings related to his other claims which were not properly presented in his state court proceedings but may possibly be considered under <u>Martinez</u> and <u>Trevino</u>.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694.  In <u>Strickland</u>,



the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

Petitioner contends that his counsel was ineffective for failing to move the court earlier in the discovery process for "my discovery material[,] . . . [which] also violates my constitutional rights under Rule 5 (SCCRIMP)"; 2) for failing to provide him with the "the fingerprint analysis for the gun that I was sentenced for"; 3) for failing to inform him that a fingerprint analysis existed until the day of my PCR hearing; 4) for failing to have the gloves that were found tested; 5) for not challenging, or advising me to challenge the gun possession charge, knowing that the only evidence against me was an alleged statement from another inmate who could have very well arranged for someone to plant the weapon where it was allegedly found, for whatever reason he chose to tell the law enforcement that information; 6) for failing to provide him with the Rule 5/ Brady trial motion responses until one week before his plea; and 7) for failing to have the gun analyzed for fingerprints. However, after careful review of the record and the arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under the standard of Strickland and Hill. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. In addition, with regard



17

to his procedurally defaulted claims, Petitioner has failed to show any substantial claim in order to overcome his procedural bar. <u>Gray</u>, 2013 WL 2451083 at * 2.

Petitioner's counsel testified at the PCR hearing that the evidence showed that the Kangaroo convenience store which was robbed was located beside a Christmas tree lot and that it was less than one-half mile from a Piggly Wiggly store on the other side of the street. After the clerk at the Kangaroo was robbed, the dogs were brought in from the Florence police department and they tracked the culprit all the way through the Christmas tree lot. A gentleman, who was apparently an off-duty investigator with the Florence police department and was at the Christmas tree lot working his second job, saw a man rushing into the Christmas tree lot and running through the parking lot. At the same time, it was coming across the radio that there had been an armed robbery. The off-duty investigator followed this person into the Piggly Wiggly. The person then went into the restroom at the Piggy Wiggly, where an employee was located, and took off his jacket and some gloves. He stashed those items in the restroom, came out, and headed for the back door. The back door had an alarm on it and the person, apparently seeing the alarm, turned around and law enforcement was there "telling him to stop and this was Mr. Smoot." (R.pp. 53-55). There was also video from the Kangaroo store and the Piggly Wiggly which verified what the person was wearing in both stores and matching the jacket worn to what had been stored in the restroom area. The jacket was taken back to the clerk and she verified that it was consistent with what the robber was wearing. In addition, counsel testified a fellow inmate told law enforcement that Petitioner had told him that he stashed a gun behind the cat and/or dog food in the Piggly Wiggly, and law enforcement thereafter located the gun exactly where the inmate told them it would be. The gun was finger printed but no fingerprints were found, which was consistent with the robber having worn the gloves which were found with the jacket. (R.pp. 55-56).



At his guilty plea, the judge told Petitioner to listen carefully to the Solicitor recite the evidence in his case.  The Solicitor then recited the evidence including, but not limited to, the video evidence and the observations of the off-duty investigator working at the Christmas tree lot, the Kangaroo store clerk, and the workers at the Piggly Wiggly.  The Solicitor stated that the workers at the Piggly Wiggly had seen the Petitioner enter the store, head down the pet food isle, head to the back of the store, ask for a back exit, and then go into a break room area which had a bathroom.  The Solicitor discussed finding the distinctive jacket stuffed under the sink in the bathroom and that the Kangaroo clerk identified the jacket.  The Solicitor also talked about the individual in the holding pod with Petitioner notifying law enforcement about the location of the gun and about law enforcement locating the gun.  (R.pp. 6-10)

Upon conclusion of her presentation of the facts to the plea court, the Solicitor said "[y]our honor that's the crutch (sic) of the – of the State's case."  (R.p. 10).  Although Petitioner argues that the Solicitor was referring the her statement regarding the gun being the crux of the State's case, a plain reading of the transcript is that the Solicitor was referring to all of the evidence that she had just recited to the plea court.  (R.p. 10).  After listening to the recitation of these facts, the plea court inquired of the Petitioner as follows: "All right.  Mr. Smoot, you've heard the recitation of facts.  Are they true and accurate?", to which the Petitioner replied, "Yes, sir."  (R.p. 11).  Petitioner also testified at his guilty plea that he was aware of the ten year (10) plea offer, that it had a deadline, and that he did not plead by that deadline.  (R.pp. 14-15).  Petitioner's trial counsel also discussed the ten (10) year offer, which expired prior to Petitioner agreeing to plead guilty.  (R.pp. 18-19).  Petitioner's counsel also recounted his having met with Petitioner on different occasions to discuss the evidence in the case and having an investigator in her office show Petitioner and members of his family the video evidence.  (R.p. 18).  Petitioner also had a preliminary hearing

19



in which law enforcement cooperated with Petitioner's counsel and gave her the information that they had in their file.  (R.pp. 16-17).

       The plea Court also discussed the charges and possible sentences directly with the Petitioner at his plea, following which Petitioner testified that he still wished to plead guilty.  (R.p. 12).  Petitioner also testified that he understood the rights that he was waiving to a jury trial, to subpoena witnesses on his own behalf, to confront witnesses, that his lawyer had done everything that he asker her to do, that he had no complaints against her, that he understood all conversations with his counsel, that he did not need any additional time to confer with his counsel, that he had not been pressured or coerced to plead guilty, that it was his decision to plead guilty, that he was guilty, and that all his answers were truthful.  (R.pp. 13-16).

       At his PCR hearing, however, Petitioner argued that he was not properly represented and was coerced into giving an involuntary and unknowing plea. Petitioner testified at his PCR hearing that he would go by his counsel's office often to try to speak to her, but wasn't allowed to do so because he had not paid his $40.00, which was apparently due as part of his indigent fees. (R.p. 44).  Petitioner also testified that his attorney would not ask to have the gun allegedly used in the robbery fingerprinted.  (R.pp. 44-45).  Petitioner testified that if he had been allowed to speak to his counsel more often and prepare his case that he would have gone to trial, but that his counsel recommended that he plead guilty and that the decision "was a share – we both agreed to it."  (R.pp. 45-46).  Petitioner testified that he did not get his discovery materials until the week of his trial, and that he told the plea judge that he committed the crime even though it wasn't the truth in order to receive a lesser sentence.  (R.pp. 47-48).  However, on cross examination at his PCR hearing, Petitioner admitted that the plea judge explained to him that he had a right to a jury trial, that he could challenge the evidence against him, that he could call witnesses, that he understood those rights



and waived them, that he told the plea judge that he had not been promised anything or been threatened, that he told the plea judge that he was guilty, and that he wanted to plead guilty. (R.pp. 50-51). Petitioner also testified that he didn't complain about his attorney to the judge because he felt like they were working together. (R.pp. 50-51).

Petitioner's counsel testified at the PCR hearing that she was appointed to represent the Petitioner, that they discussed his charges, that he had a preliminary hearing, that she went over the State's evidence with the Petitioner and outlined the evidence against him, and advised him that based on the evidence it was in his best interest to enter a plea. (R.pp. 53-56). Petitioner's counsel testified that there were "quite a few and quite a bit" of negotiations over a potential plea, and that in July 2006, the solicitor made an offer of a sentence of a minimum of ten (10) years on the armed robbery charge and that she would dismiss the other charges. The offer was then kept open, discussed with Petitioner, and counsel had multiple notes about the times that it was discussed. (R.p. 56). Counsel testified that because the solicitor had been leaving the offer out there and the case was getting some age on it, she told Petitioner that his case was getting high priority on the trial list and that it was time to do something. (R.p. 56). She also had a note from June 18th that the Solicitor had notified her that she was not going to leave the offer open and that it would expire on June 20th. (R.pp. 56-57). Counsel testified that she shared that information with the Petitioner and that he rejected it on June 19th according to her notes, and that Petitioner also told her on the 19th that he wanted to hire private counsel. (R.p. 57). When Petitioner came to court on June 21, he would not talk to his counsel. Counsel attempted at that time to get the solicitor to agree to an Alford[10] plea, but the Solicitor refused. (R.p. 57).

---

[10]North Carolina v. Alford, 400 U.S. 25 (1970).



Counsel testified that the Solicitor then decided to call the case on June 25th, and that an investigator called Petitioner three times and left a voice message that they were desperately trying to get Petitioner into court. (R.p. 57). Counsel testified that the judge was waiting, they went ahead and pulled a jury on the 25th in Petitioner's absence, and that Petitioner did not show up until the morning of June 26th. (R.pp. 57-58). Counsel testified that she did not remember the judge issuing a bench warrant, and that she believed that he extended her a courtesy and did not do so since she was in the process of attempting to locate Petitioner. (R.p. 58). Counsel testified that when Petitioner came in on the 26th, she made sure that he knew that the jury had been pulled and that he was up for trial. At that point, law enforcement was present and was unhappy because of the severity of the case, including that a loaded gun had been left in a grocery store where children could have gotten a hold of it. (R.p. 59). Because of that situation and Petitioner refusing to take the earlier offer, the Solicitor made a new offer of twelve (12) years on the armed robbery and five (5) years, consecutive, on the gun charge. (R.p. 59).

Counsel also testified that she did not refuse to file for a bond rehearing, but that there needed to be a change of circumstances in order to obtain one. (R.p. 61). Counsel read her letter to the Petitioner regarding his bond in which she asked him to let her know why a new hearing was merited and what amount of bond he believed he could make. (R.p. 60). With regard to the fingerprint analysis, counsel testified that she never tested the gloves because she was told there were no fingerprints on them and she believed that could help the Petitioner. (R.p. 62). She did not want to ask them to look for more and possibly sink her client in the event they found something unfavorable when they rechecked. (R.p. 62).

While Petitioner's memory at the PCR hearing of what had transpired over two years earlier was somewhat different, Petitioner's statements at the actual time of the events in question



were quite definitive.  The PCR judge found counsel's testimony credible and that Petitioner had received the discovery materials, and that Petitioner's counsel had thoroughly discussed the materials with Petitioner, the charges that he was facing, and the possible sentences before the plea.  Petitioner produced no witnesses or evidence in his PCR proceedings to support his assertions of what evidence he could have used at trial from the discovery materials even if he had possessed them earlier.  Bassette v. Thompson, 915 F.2d 932, 939, 941 (4th Cir.1990), cert. denied, 499 U.S. 982 (1991); cf. Bannister v. State, 509 S.E.2d 807, 809 (S.C.1998) ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."]; Glover v. State, 458 S.E.2d 539, 540 (S.C.1995)["[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."]; Clark v. State, 434 S.E.2d 266, 267–268 (S.C.1993) [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different]; Underwood v. State, 425 S.E.2d 20, 22 (S.C.1992) [prejudice from trial counsel's failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing].  Accordingly, Petitioner has not shown any ineffective assistance of counsel with respect to his allegations about failing to receive his discovery materials earlier.  The PCR court also found that plea counsel worked diligently to obtain a plea offer and obtained a pretty favorable one, but that Petitioner had rejected that offer, that there was no ineffective assistance of counsel with regard to the fingerprints, and that Petitioner failed to meet his burden of proving counsel failed to render reasonably effective assistance.  Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].



23

Further, even if this Court were to accept Petitioner's unsubstantiated assertions regarding the facts in this case, he has shown no prejudice because it is clear in the record that the plea court also went over the facts of the case and Petitioner's rights prior to the acceptance of the plea, following which Petitioner admitted he had committed the crime and entered his plea of guilty. Cf. Pittman v. South Carolina, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both."] (citing State v. Ray, 427 S.E.2d 171, 174 (S.C. 1993)); see also State v. Lambert, 225 S.E.2d 340 (1976)); Roddy v. South Carolina, 528 S.E.2d 418, 421 (S.C. 2000). See Sargent v. Waters, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute."](quoting Marshall v. Lonberger, 459 U.S. 422, 431-432 (1983)).  There is no basis in this record to overturn the findings of the State Court or to find that any of Petitioner's procedurally barred claims present any substantial claim which would have provided Petitioner relief if they had been raised in his PCR proceedings.  Petitioner has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court.

While Petitioner contends that he only went forward with the plea because his counsel failed to inform him that he had a very arguable issue for trial regarding the gun and its lack of fingerprints, criminal defendants often make the decision to plead guilty based on a likelihood of conviction at trial, and although Petitioner now claims that his plea was involuntary based on



coercion and not being advised about the lack of prints on the gun, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d. 167, 171 (4th Cir. 1981).  Petitioner has failed to show his counsel was ineffective on these claims.  Therefore, these issues are without merit and should be dismissed.  Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, 529 U.S. 362 (2000);  Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; Sargent, 71 F.3d at  160 [historical facts underlying guilty pleas are entitled to deference]; see Boykin v. Alabama, 395 U.S. 238 (1969); Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus.].

### III.

In Ground Two of his Petition, Petitioner contends that his guilty plea was not freely and voluntarily entered based on his counsel failing to tell him that he had a very arguable issue or issues for trial, that it was not his decision to plead guilty, that counsel failed to get him to sign in writing anything prior to entering his plea, that he only gave the testimony at his guilty plea under

25



the advice of my counsel, or that his guilty plea was the product of duress, coercion and fear of a harsher sentencing threat. Except for counsel's failure to have Petitioner sign anything in writing prior to his guilty plea, the other issues raised in Ground Two have already been discussed. <u>See</u> discussion, <u>supra</u>. Petitioner has not shown that he is entitled to relief on any of those issues or, where relevant, that they present any substantial claim which could allow Petitioner to overcome the procedural bar in this case.

With regard to the claim concerning counsel's failure to get him to sign anything prior to his guilty plea, counsel testified at the PCR hearing that it was her normal practice in more serious cases to have a guilty plea checklist that she goes through with people, but that she did not do one in this case because of the timing of Petitioner's decision to plead guilty. Counsel testified that when Petitioner decided to plead guilty the jury had already been pulled, was present, and waiting along with the trial judge. (R.p. 62). Petitioner had not shown up or even alleged any constitutional right to have his decision to plead guilty reduced to writing prior to the entry of his guilty plea. Further, the guilty plea transcript already discussed herein clearly demonstrates that Petitioner's guilty plea was freely and voluntarily entered.

Although Petitioner now contradicts his testimony from his guilty plea, his former representations as well as the findings by the judge accepting his plea, constitute a formidable barrier in this proceeding. <u>Blackledge</u>, 431 U.S. at 73-74. The record shows that Petitioner chose to enter a plea of guilty, and did so freely and voluntarily. <u>Little v. Allsbrook</u>, 731 F.2d 238 (4th Cir. 1984); <u>U.S. v. Futeral</u>, 539 F.2d 329 (4th Cir. 1975); <u>Brady v. United States</u>, 397 U.S. 742 (1970) (pleading guilty to avoid a reasonable possibility of receiving a greater sentence does not constitute a coerced plea); <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). The undersigned can find no basis in the record or the applicable caselaw to overturn the findings of the state court with regard to the adequacy of



counsel's representation, or to find that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; Hill, 474 U.S. 52 [Where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial]. The undersigned also does not find that any of the issues not properly raised and presented in state court provide any substantial issue or that his PCR counsel was ineffective for failing to raise them. Ford, 2013 WL 4434389, at * 11. Accordingly, Petitioner has not shown that he is entitled to relief on these claims, and they should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that this petition be **dismissed**.

The parties are referred to the Notice Page attached hereto.


_____

Bristow Marchant
United States Magistrate Judge

September 9, 2013
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

</div>

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

